**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RICKIE L. HILL,<br><br>                    Plaintiff,<br><br>vs.<br><br>RENE BAKER, et. al.<br><br>                    Defendants. | )  3:11-cv-00717-LRH-WGC<br>)<br>)  **REPORT & RECOMMENDATION**<br>)  **OF U.S. MAGISTRATE JUDGE**<br>)<br>)<br>)<br>)<br>)<br>) |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' motion for summary judgment[1]. (Doc. # 74.)[2] Plaintiff has opposed the motion (Doc. # 85) and filed a cross-motion for summary judgment (Doc. # 86).[3] Defendants filed a reply in support of their motion for summary judgment (Doc. # 114) as well as an

---

[1] Defendants originally filed this as a motion to dismiss for failure to exhaust administrative remedies, and in the alternative, motion for summary judgment. The motion to dismiss for failure to exhaust was eventually withdrawn when it was discovered that Defendants' had relied on the grievance records of another inmate, and not those of this Plaintiff. Accordingly, the court will proceed only on an analysis of the motion for summary judgment. (*See* Docs. # 100 (minutes from Aug. 12, 2013 hearing) and # 111 at 2 (acknowledging that the wrong grievance records were utilized and confirming withdrawal of the motion to dismiss for failure to exhaust administrative remedies).)

[2] Refers to court's docket number.

[3] Docs. # 85 and # 86 are identical but were docketed separately by the clerk's office to reflect that Plaintiff included both an opposition to Defendants' motion and his own cross-motion for summary judgment.

opposition to Plaintiff's cross-motion for summary judgment (Doc. # 111).[4] Plaintiff filed a reply in support of his cross-motion for summary judgment. (Doc. # 139.)

After a thorough review, the court recommends that both Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment be denied.

## I. BACKGROUND

At all relevant times Plaintiff Rickie L. Hill was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 11) at 1.) The events giving rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Christopher Davis, Paul Malay[5], and Claude Willis. (Doc. # 11, Screening Order (Doc. # 13).)

On screening, the court determined Plaintiff could proceed with three claims. (Doc. # 13.) First, in Count II, Plaintiff was permitted to proceed with his Eighth Amendment claim of excessive force against defendant Malay, based on the allegation that on March 3, 2011, defendant Malay escorted Plaintiff to the shower and told him he could only use the dirty shower and when Plaintiff refused, Malay slammed him into the wall, causing injuries to his teeth, face and lip. (*See* Doc. # 11 at 8.)

---

[4] Defendants also advised the court regarding the misidentification of Plaintiff's medical exhibits which Defendants sought to file under seal in support of their motion for summary judgment. (*See* Doc. # 111 at 2:9-19.) Defendants resubmitted the exhibits used in support of their motion and also re-submitted them to Ely State Prison's warden so that Plaintiff would be permitted to request to review the records pursuant to department policies and would ensure that Plaintiff was able to review the documents.(*Id*, n.4.) Defendants indicate that the resubmission of records is without the mental health and dental records which were originally submitted (and presumably not relevant to this case), and added an unusual occurrence report dated July 28, 2011, which is relevant to Plaintiff's excessive force claim against defendant Davis. (*Id*. at n. 2.)The motion for leave to file the original submission under seal is set forth at Doc. # 76. The motion for leave to file the resubmitted medical records under seal is set forth at Doc. # 110. The medical records are provisionally sealed by the clerk's office pending resolution of the motion for leave to file them under seal. (*See* under seal submission of exhibits at Docs. # 77, # 112.) Plaintiff has filed several motions that also pertain to these records. (*See* Docs. # 123, # 124.) The court will address each of these motions (Docs. # 76, # 110, # 123, # 124)  in a separate order to be issued concurrently with this Report and Recommendation.

[5]  This defendant's name was apparently mistakenly spelled by Plaintiff as M**e**lay.

Second, in Count II, Plaintiff was allowed to proceed with his Eighth Amendment claim of excessive force against defendant Davis, based on the allegation that on July 28, 2011, after Plaintiff had "captured" the food tray slot, defendant Davis punched Plaintiff in the arm with so much force that he temporarily lost feeling in his arm and it has not fully recovered. (*Id.*)

Third, in Count III, Plaintiff was allowed to proceed with an Eighth Amendment claim for deliberate indifference to Plaintiff's safety based on the allegation that defendant Willis told Plaintiff's prior cellmate's mother on the phone, as well as other inmates in the prison population, that Plaintiff was gay or bisexual and that he was a sex offender. (*Id.* at 10.) Plaintiff claims that due to these rumors inmates who had to cell with him or were faced with the possibility of sharing a cell with him wanted to kill him and he feared for his life. (*Id.* at 11.)

Defendants move for summary judgment. (Doc. # 74.) They argue that there is no evidence to support Plaintiff's claims that defendant Malay smashed his face on March 3, 2011, or that defendant Davis punched Plaintiff's arm on July 28, 2011. (Doc. # 74 at 6-8.) In addition, defendant Willis denies ever discussing Plaintiff's sexual orientation with anyone. (*Id.* at 8-9.)

Plaintiff opposes Defendants' motion (Doc. # 85), disputing Defendants' version of the facts, and asserts that summary judgment should be granted in his favor (Doc. # 86).

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)).[1] Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250. The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary:  (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id .* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co.  v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations

---

[1] Federal Rule of Civil Procedure 56 was amended in 2010 to state: "The court shall grant summary judgment if the movant shows that there is no genuine *dispute* as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis added.) The analysis under the cases cited, however, remains the same.

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

5

significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A. Eighth Amendment Excessive Force**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend.  VIII.  It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted).  The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*.  (quoting *Whitley v.  Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v.  McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.  McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v.  Stanford*, 323 F.3d 1178, 1184 (9th Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The extent of injury may also provide some indication of the amount of force applied." *Id*.

That being said, not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id*. at 1180.

### 1. Defendant Malay

#### a. Defendant Malay's Argument

Defendant Malay argues that there is no evidence to support Plaintiff's claim that he smashed Plaintiff's ace on March 3, 2011. (Doc. # 74 at 6-7.) He contends that Plaintiff's medical records do not reflect any injuries or incidents on the date of the alleged battery. (*Id*. at 7:6-9, citing Plaintiff's medical records.) Then, in a somewhat contradictory statement, defendant Malay indicates that Plaintiff did mention the alleged battery on March 19, 2011. (Doc. # 74 at 7:9-11, again citing Plaintiff's medical records.)

7

**b. Plaintiff's Argument**

Plaintiff, on the other hand, maintains that on March 3, 2011, while he was in wrist and leg restraints, defendant Malay escorted Plaintiff from his cell to the showers downstairs in his unit. (Docs. # 85, # 86 at 2.) Plaintiff asked to use the clean shower, and defendant Malay told Plaintiff he could only use the dirty shower. (*Id*.) When Plaintiff refused to use the dirty shower, defendant Malay slammed Plaintiff into the cement in front of the shower causing injury to Plaintiff's teeth, lip, and face. (*Id*.) He was then returned to his cell. (*Id*. at 2-3.)

Plaintiff references a grievance regarding the incident, which he contends was referred to the Inspector General, and also refers to many kites he asserts he sent to medical regarding the alleged assault by defendant Malay. (*Id*. at 3 n. 2, *see also* summary of grievance regarding this incident at Doc. # 85 at 32.) A review of the grievance summary referenced by Plaintiff indicates that Plaintiff filed an informal level grievance where he reported being taken to the showers by Correctional Officers Arias and Malay on March 3, 2011, and when he refused to shower in the dirty shower, defendant Malay "got mad and slammed [his] face into the wall, chipping [his] tooth." (Doc. # 85 at 32.) The summary of the response to the grievance does indicate that the grievance was referred to the Inspector General. (*Id*.)

Plaintiff did also submit several kites he sent to medical and mental health where he references being assaulted by defendant Malay. (*See* Docs, # 85-1, # 86-1 at 14, 24.)

**c. Analysis**

Preliminarily, the court notes that Plaintiff's opposition to Defendants' motion for summary judgment and cross-motion for summary judgment make multiple references to discovery responses where defendant Malay apparently responded that he was on mandatory

furlough on the date of the alleged incident, March 3, 2011. Plaintiff maintains defendant Malay was working that day.

Curiously, defendant Malay did not even make the argument in his own motion that summary judgment should be granted in his favor because he was not present on the date the alleged incident occurred. Instead, defendant Malay raises this argument for the first time in his opposition to Plaintiff's cross-motion for summary judgment. (*See* Doc. # 111 at 3-4.) In support of the opposition to Plaintiff's cross-motion where this argument is raised, defendant Malay does not provide his own declaration stating that he was not at work that day, but references his response to Plaintiff's request for admission number 9 where he states he was furloughed that day. (*See* Doc. # 111-1 at 5.) Again, this response to Plaintiff's request for admission was referenced for the first time in defendant Malay's opposition to Plaintiff's cross-motion for summary judgment.

In addition, the opposition to Plaintiff's cross-motion for summary judgment contains the declaration of Calvin Peck, which was also submitted for the first time in defendant Malay's opposition to Plaintiff's cross-motion for summary judgment. (*See* Doc. # 111-2.)

Calvin Peck is a Lieutenant at ESP and he accessed defendant Malay's time sheet for March 3, 2011, and states that it reflects that defendant Malay was on unpaid furlough that day. (Doc. # 111-2 ¶ 6.) He attaches a copy of defendant Malay's time sheet for the period of February 21, 2011 through March 6, 2011. (Doc. # 111-2 at 5.) The column corresponding to March 3, 2011 states: "6:00 a.m.-2:00 p.m.: Regular Shift" and underneath that it states "Furlough."

First, submitting this information in response to Plaintiff's cross-motion for summary judgment is not sufficient to meet his burden on his own motion for summary judgment. Second,

Plaintiff maintains that defendant Malay was at work on March 3, 2011, and that he did assault Plaintiff on that day. This is corroborated by his grievance regarding this incident, which is summarized in NDOC's own records of grievances filed by Plaintiff. In addition, defendant Malay himself has not provided a declaration stating that he was not at work that day. While defendant Malay provided a response to a request for admission stating he was on unpaid furlough on March 3, 2011, this is not a verified discovery response. (*See* Doc. # 111-1.) Therefore, even if defendant Malay had properly raised this argument in his motion for summary judgment, a genuine issue of material fact exists as to whether or not defendant Malay was working on March 3, 2011.

The court will now address the arguments that were advanced in defendant Malay's motion for summary judgment—that Plaintiff's medical records do not contain a reference to any injury as a result of this incident.

Plaintiff, on the other hand, maintains that his version of facts is correct, that he was injured, and points to the kite containing his complaint regarding this incident.

First, the court points out that while defendant Malay first argues that there is no evidence of any injury as a result of this alleged incident, the very same paragraph that contains this argument references the fact that Plaintiff did file a grievance about this event, albeit two weeks after the event allegedly took place. Then, in his opposition to Plaintiff's cross-motion for summary judgment, defendant Malay specifically acknowledges that Plaintiff sent grievance on March 19, 2011, stating that he was assaulted by defendant Malay on March 3, 2011, and that his head was banged against the wall making his nose bleed, giving him a knot, chipping his tooth, and causing him to suffer from migraines. (Doc. # 111 at 4:3-8.) The acknowledgement that this

grievance exists in and of itself creates a genuine issue of material fact as to whether the incident occurred and the existence and extent of Plaintiff's injuries.

It is clear that defendant Malay has not met his burden of establishing he is entitled to summary judgment; therefore, his motion should be denied.

Plaintiff also moves for summary judgment on this claim; however, a factual issue exists as to whether or not defendant Malay was working that day, and therefore, as to whether or not the incident occurred. In addition, if the incident did occur, a factual issue exists as to whether or not Plaintiff was injured as a result. Therefore, Plaintiff's cross-motion for summary judgment should also be denied as to this claim.

### 2. Defendant Davis

#### a. Defendant Davis's Argument

Defendant Davis similarly argues that there is no evidence to support Plaintiff's claim that he punched Plaintiff's arm on July 28, 2011, after Plaintiff had "captured the food slot." (Doc. # 74 at 7-8.) Defendant Davis asserts that no injuries to Plaintiff's arm are described in the progress notes in Plaintiff's medical records relating to the July 28, 2011 incident. (*Id*. at 7:23-25, citing Plaintiff's medical records at pp. 1-2.) In addition, defendant Davis provides the declaration of Nurse Angela Gregersen, who examined Plaintiff following the incident, and states that the only incident Plaintiff reported was a self-inflicted cut on his foot that he incurred when kicking his cell door out of anger. (*Id*. at 7:25-27, citing Gregersen Decl. at Doc. # 74-2.)

A review of Ms. Gregersen's declaration reveals that she did examine and interview Plaintiff following the July 28, 2011 incident, and he did not complain of any injury to his arm, but only that his foot was injured, and he did not appear to be otherwise injured. (Gregersen

Decl. at Doc. # 74-2 ¶¶ 2, 4, 5, 8, 9.) She did not state that the injury was self-inflicted or report

that it resulted from his kicking the cell door out of anger.

   Defendant Davis asserts that this incident of Plaintiff "capturing the food slot" actually

involved Plaintiff's attempt to stab him in the abdomen with a sharpened pencil through the food

slot. (*Id*. at 8:6-9, citing his own declaration at Doc. # 74-3.) Defendant Davis provides the

following description of events from that day in his declaration:

> 2. On the 28th day of July, 2011, I was assigned to Housing Unit One, in which
> Plaintiff Inmate Rickie Hill was housed in cell # 1 B 6.
> 3. At approximately 0635 on the 28th of July, 2011, as I was picking up feeding
> trays and garbage, I arrived at cell #1 B 6 and observed Plaintiff standing at the
> rear of the cell, facing the cell door with a bag of trash in his left hand.
> 4. Inmate Hill stated: "I have trash and I'm going to take a shower today". I
> opened Inmate Hill's food slot and stepped back as he walked forward towards the
> cell door. Upon arrival to the cell door Inmate Hill leaned forward and as his left
> hand reached out of the food slot opening he threw the trash bag hitting me in the
> legs.
> 5. Plaintiff then lunged forward, capturing the food slot with his left forearm as he
> simultaneously thrust his right hand out the slot, clenching a sharpened pencil. I
> jumped backwards as Inmate Hill thrust this weapon at full arms-length
> attempting to stab me in the midsection.
> 6. As he attempted to batter me Inmate Hill stated "I had a clean slate until your
> punk ass wrote me up last week, I'll give you something to write up bitch!"
> 7. Inmate Hill then pulled his right arm back into his cell and lifted his left arm off
> the slot and began to stand up. I reached forward in an attempt to close the slot
> and Inmate Hill attempted to stab my arm with the weapon and he recaptured the
> food slot....

(Davis Decl., Doc. # 74-3 ¶¶ 2-7.)

   **b. Plaintiff's Argument**

   Plaintiff describes a much different version of events. (Docs. # 85, # 86 at 3-4.) He states

that on July 28, 2011, at approximately 6:30 a.m., because he was not served his kosher diet

breakfast by the night shift, he "captured" his cell door's front food slot in protest, so that the

matter would be brought to the attention of prison officials. (*Id*. at 3.) He says that defendant

Davis struck his arm in an effort to induce Plaintiff to retract his arm so that he could close the

food slot. (*Id.*) Plaintiff asserts that defendant Davis used enough force in his initial attempt to shut the food slot that it caused Plaintiff injury to his arm from which he has still not recovered. (*Id.*) He asserts that as a result of this incident, his nerves were injured and he only has seventy-five percent use of his arm. (Docs. # 85-1, # 86-1 at 1.) He has submitted a kite where he states that he was experiencing numbness on one side of his body after this incident. (Docs. # 85-1, # 86-1 at 13.)

Plaintiff also claims that he told Nurse Gregersen that he was hit in his arm. (Doc. # 85 at 50.) He further contends that he sent a kite to medical regarding defendant Davis hitting him in the arm, but never received a copy back. (Docs. # 85, # 86 at 54.)

### c. Analysis

It appears Plaintiff is now stating that defendant Davis may not have punched him per se, but in attempting to close the food slot, used so much force that it caused an injury to Plaintiff's arm that has still not recovered. Regardless of how the alleged injury was accomplished, the court finds a genuine issue of material fact exists as to Plaintiff's excessive force claim against defendant Davis. A fact finder believing defendant Davis's version of events might conclude the use of force "was applied in a good-faith effort to maintain or restore discipline."

On the other hand, a fact finder believing Plaintiff's version of events might conclude that the use of force was applied in a "malicious and sadistic" manner for the purpose of causing harm. While defendant Davis claims that Plaintiff never complained of or otherwise grieved any such injury, Plaintiff claims he did send a kite but it was never returned to him. This is corroborated by his submission several kites where he asks the medical department about kites he sent for which copies were never returned.

Therefore, the court recommends that both defendant Davis's motion for summary judgment and Plaintiff's cross-motion for summary judgment be denied as to Plaintiff's excessive force claim against defendant Davis.

**B. Eighth Amendment Deliberate Indifference to Safety- Defendant Willis**

**1. Legal Standard**

Here, Plaintiff alleges that defendant Willis spread rumors about Plaintiff's sexual orientation and being a sex offender which caused him to fear for his life. With this claim, Plaintiff must establish defendant Willis's deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citation omitted). The alleged deprivation must be both "objectively, sufficiently serious"; in other words, that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). He must also show that defendant Willis knew of and disregarded an excessive risk to his safety. *Id*. at 837.

**2. Analysis**

**a. Summary of Argument**

Defendant Willis argues he is entitled to summary judgment because no evidence supports Plaintiff's claim that defendant Willis disregarded a risk to Plaintiff's safety. (Doc. # 74 at 8-9.) He acknowledges having telephone conversations with Plaintiff's former cellmate's mother, Ms. Pitties, on October 30, 2008, but denies discussing Plaintiff's sexual orientation with her or with anyone else. (*Id*. at 9, citing his own declaration at Doc. # 74-1, *see* ¶¶ 6-10.)

Plaintiff, on the other hand, maintains that defendant Willis circulated rumors that Plaintiff is gay, bisexual, and a sex offender. (Docs. # 85, # 86 at 4.)

### b. Analysis of Claim Regarding Willis Circulating Rumors of Plaintiff's Sexual Orientation

Defendant Willis states that he did not circulate rumors regarding Plaintiff's *sexual orientation* to anyone. Plaintiff maintains that he did. Therefore, a factual issue exists as to whether defendant Willis circulated these rumors or not. Defendant Willis did *not* make an argument about the absence of evidence of injury, *i.e.* evidence that Plaintiff did in fact fear for his life as a result of these rumors. As such, summary judgment should not be granted in favor of defendant Willis on Plaintiff's claim that he circulated rumors about Plaintiff's *sexual orientation* and as a result he feared for his life.

Turning to Plaintiff's cross-motion for summary judgment, the court finds Plaintiff has not pointed to any evidence other than his conclusory allegation that he feared for his life as a result of defendant Willis circulating rumors about his *sexual orientation*. Therefore, Plaintiff's cross-motion for summary judgment on his claim that defendant Willis violated his Eighth Amendment rights when he circulated rumors about Plaintiff's *sexual orientation* should be denied.

### c. Analysis of Claim Regarding Willis Circulating Rumors that Plaintiff is a Sex Offender

Defendant Willis's motion for summary judgment did not address Plaintiff's claim that defendant Willis circulated among the prison population that Plaintiff is a *sex offender* which caused him to fear for his life. He only states that he did not circulate rumors about Plaintiff's *sexual orientation*. (*See* Doc. # 74-1.) While defendant Willis states that he did not make such comments in his opposition to Plaintiff's cross-motion for summary judgment (*see* Doc. # 111 at 3:1-3), he did not raise the argument in his own motion and there is no reference to comments

15

about Plaintiff being a *sex offender* in his declaration filed either with his own motion or in support of his opposition to Plaintiff's cross-motion for summary judgment. (*See* Docs. # 74-1, # 111-6.) Having not met his burden of demonstrating he is entitled to summary judgment as to this claim that he circulated rumors that Plaintiff is a *sex offender*, summary judgment should be denied.

The court will now address Plaintiff's cross-motion for summary judgment insofar as he claims that defendant Willis violated his Eighth Amendment rights by circulating that he is a *sex offender*. Plaintiff has submitted the declaration of another inmate, David O. Hooper, who states that he has overheard other inmates call Plaintiff "a child molester, rapo, pimp of little kids, sex offender..." and include "death threats."  (Docs. # 85, # 86 at 30 ¶ 28.) Plaintiff generally states he has submitted kites to mental health "expressing [his] fear and anxiety stemming from the actions, and inactions of E.S.P. staff" (Docs. # 85, # 86 at 46) in support of his motion, but does not specifically point out a kite where he complained of fear or anxiety as a result of defendant Willis publicizing that he is a sex offender.

The court has carefully reviewed all of the documentation Plaintiff submitted in support of his motion and opposition to Defendants' motion. (Docs. # 85, # 86, # 85-1, # 86-1.) This documentation includes various kites Plaintiff sent to medical and mental health. While one of those kites references that he was he was suffering anxiety, stress and pain, it specifically stated that it was because Correctional Officer Dolezad was working and stated that he feared Correctional Officer Dolezad would search his cell and throw away his legal mail. (Docs. # 85-1, # 86-1 at 2.) None of the kites reference Plaintiff experiencing stress or anxiety or fear related to defendant Willis's alleged conduct. Therefore, Plaintiff's cross-motion for summary judgment

should be denied as to this claim as he has not established he would be entitled to a directed verdict.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order that:

(1) Defendants' motion for summary judgment (Doc. # 74) be **DENIED**; and

(2) Plaintiff's cross-motion for summary judgment (Doc. # 86) be **DENIED**.

The parties should be aware of the following:

1.That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

**DATED:  January 13, 2014.**

_____

**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**